**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4604**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

     v.

JOHN MOORE, JR.,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:12-cr-00062-FDW-1)

Argued: December 8, 2016                Decided: March 10, 2017

Before KEENAN, WYNN, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Keenan and Judge Wynn joined.

**ARGUED**: Denzil Horace Forrester, DENZIL H. FORRESTER ATTORNEY-AT-LAW, Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF**: Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

John Moore, Jr., pleaded guilty to possession of child pornography and then, at his sentencing hearing, proclaimed his innocence. The district court, justifiably confused, repeatedly suggested that what Moore intended was an *Alford* plea – a plea in which a defendant maintains his innocence but pleads guilty in light of the strength of the government's case against him. Moore agreed, and the district court accepted an *Alford* plea. The court then sentenced Moore to 108 months' imprisonment, the bottom of Moore's advisory Guidelines range, without any reduction for acceptance of responsibility.

The primary issue raised by this appeal is whether the district court impermissibly participated in plea discussions by encouraging Moore to enter an *Alford* plea. Because Moore did not object to the court's involvement, we review for plain error only. And because any error by the district court did not affect Moore's substantial rights, reversal is not warranted on that ground. Nor are we persuaded by Moore's other challenges to his conviction. Accordingly, we affirm.

## I.

This case began when Moore brought his computer to an Apple Computer Store for repairs. A technician discovered child pornography on the computer, and the FBI intervened. After obtaining a warrant, the FBI searched the computer, discovering hundreds of images and several videos depicting child pornography, some involving

2

sadistic or masochistic conduct. During an interview with the FBI, Moore admitted to viewing approximately 2,000 images of child pornography.

On April 11, 2013, Moore pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). A United States magistrate judge accepted that plea after conducting a colloquy under Rule 11 of the Federal Rules of Criminal Procedure, during which Moore was represented by Joseph Bell, an attorney retained by his family. Under oath, Moore affirmed, among other things, that he understood the charge and maximum penalty that he was facing, and that he was waiving his right to a jury trial; that nobody had "threatened, intimidated, or forced" him to enter a guilty plea, J.A. 24; and that he had discussed the consequences of pleading guilty with his lawyer and was satisfied with Bell's services.

In response to a question from the magistrate judge, Moore affirmed that he was "in fact [] guilty" of the offense. J.A. 23. But later in the colloquy – and foreshadowing the difficulties to come – Moore equivocated: "Every fiber of my being wants to fight it, but . . . I want to accept responsibility for my actions . . . even though . . . nothing was malicious, nothing was intentional." J.A. 25. Still later, Moore clarified, "I'm guilty, but I don't think I'm guilty of such a harsh sentence." J.A. 27. Moore affirmed that he had heard and understood every part of the plea colloquy and that he still wished to plead guilty. The magistrate judge accepted the plea as voluntarily and knowingly given.

Approximately six months later, Moore wrote to the court, alleging that Bell had provided "insufficient counsel" and told Moore that "it would go worse for [him] if [he] went to trial" instead of pleading guilty. J.A. 34. Bell moved to withdraw as counsel,

3

and the district court ultimately granted his motion and appointed attorney Denzil Forrester to represent Moore. Now with new counsel, Moore moved to withdraw his guilty plea in July 2014, over a year after his original plea was entered.

What followed was a series of four hearings, spanning a year, during which the district court considered Moore's motion. As part of those proceedings, the court ordered a mental health evaluation of Moore, prompted by Moore's allegations regarding his ability to understand his plea as well as Moore's erratic behavior in court. The district court concluded that Moore was competent to proceed and to assist in his defense, and went on to consider the merits of Moore's motion.

The precise nature of Moore's claim shifted over the extended course of the proceedings. Ultimately, however, Moore argued that he should be entitled to withdraw his guilty plea for two reasons, both related to his representation by Bell: first, because Bell had pressured him to plead guilty, rendering his plea involuntary; and second, because Bell had a conflict of interest, with financial concerns about expenses coloring his advice to Moore. To address those allegations, the district court heard testimony from two of Moore's family members, who described their fee arrangement with Bell, and expressed their belief that Moore had not wanted to plead guilty but had been "talked [] into" it by Bell, J.A. 292. The court also heard from Bell, who testified that while he advised Moore that a guilty plea would be in his interest, he did nothing to coerce or manipulate Moore; that he would have taken the case to trial had Moore so chosen; and that his financial arrangement with Moore's family played no role in his advice to Moore.

4

The district court denied Moore's motion to withdraw his guilty plea after considering the factors described in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The court made an express finding of fact that Bell was a "very credible witness," who had drawn on his extensive experience to give Moore "very good advice" regarding Moore's guilty plea. J.A. 460–61. Reviewing in detail the Rule 11 colloquy that had accompanied Moore's plea, and emphasizing Moore's full and compelling answers to the magistrate judge's questions, the court concluded that there was no credible evidence that Moore's plea was involuntary. Nor, the court held, could Moore credibly assert his legal innocence, in light of "overwhelming evidence" of Moore's guilt and the absence of any basis for challenging Moore's confession to the FBI. J.A. 470–71. In sum, after expressly considering each of the *Moore* factors, the court concluded that Moore had not provided a "fair and just reason" for withdrawal of his plea. J.A. 473.

Before adjourning, the district court briefly addressed Moore's pending sentencing. The court noted that Moore's presentence report recommended against an offense-level reduction for acceptance of responsibility. If Moore continued to argue that his guilty plea was not knowing and voluntary, the court warned, then the court would be bound to adopt that recommendation and deny credit for acceptance of responsibility.

That brings us to the September 2015 sentencing hearing that is the main focus of this appeal. In light of the earlier proceedings, the district court opened by asking Moore whether he was prepared to accept responsibility for his offense. And notwithstanding the court's prior warning, Moore immediately professed his innocence: "I would like to accept responsibility for my actions, but I still want to maintain my innocence." J.A. 494.

5

When the court expressed its confusion, Moore reiterated his position: "I accept responsibility for my actions, but I still maintain . . . that I didn't do anything wrong. . . . I've never done anything willfully wrong, bad, unlawful." J.A. 496; *see also* J.A. 502 ("What I'm saying is I'm not guilty of any criminal behavior . . . but I accept responsibility for my actions. That's what I'm saying.").

It was at this point that the district court, on its own initiative, introduced the idea of an *Alford* plea – that is, a plea in which a defendant "proclaims he is innocent, but intelligently concludes that his interests require entry of a guilty plea" in light of strong evidence of guilt. *See United States v. Davis*, 679 F.3d 177, 186 (4th Cir. 2012) (internal quotation marks and citation omitted). It is not entirely clear from the record whether the district court was construing Moore's original plea as an *Alford* plea, *see* J.A. 517 ("[T]he magistrate judge properly found that defendant knowingly and voluntarily entered a plea akin to an *Alford* plea, admitting he was guilty for purposes of advancing his case[.]"), or allowing Moore to convert his original plea into an *Alford* plea, *see id.* at 551 ("So what the Court is doing today is allowing you to in essence change your plea from a traditional plea of guilty to an *Alford* plea[.]"). But either way, the district court explained more than once to Moore that in its view, what Moore actually had in mind was an *Alford* plea. *See, e.g.*, J.A. 515 ("[Y]ou apparently consider yourself guilty in the context of an *Alford* plea[.]"); *id.* at 551–52 ("I'm trying to help – allow you to enter a plea that seems to comport with your personal conscience."). And the message was received by Moore, who stated that he was "now [] trying to cooperate with the [c]ourt to do the . . . *Alford* [plea.]" J.A. 559.

6

The district court explained to Moore that an *Alford* plea does not constitute acceptance of responsibility, and that the court generally will not grant a sentencing reduction for acceptance of responsibility when an *Alford* plea is entered. Moore indicated that he understood those consequences. Though the government objected to treatment of Moore's plea as an *Alford* plea – consistent with Department of Justice policy against such pleas – neither Moore nor his counsel joined in that objection. Defense counsel did, however, request that the court conduct a new colloquy with Moore. His concern, as he later explained, was that he could think of no reason why "someone [would] enter an *Alford* plea knowing that they're giving up that privilege or benefit of getting acceptance [credit at sentencing]." J.A. 564. But the district court had a response: "Because his [Moore's] conscience is more important than some extra time in jail." *Id.* Moore agreed with that assessment.

The court agreed to undertake a second plea colloquy. As part of that colloquy, the district court explained to Moore that it would not revisit Moore's motion to withdraw his plea, leaving Moore with only two options: Moore could enter an *Alford* plea, or he could retain his initial, traditional guilty plea. Moore stated that he wished to "continue to maintain that [he] never willfully did anything wrong or unlawful," J.A. 543, and confirmed his desire to continue with an *Alford* plea several more times over the course of the colloquy. At the close of the colloquy, the court accepted Moore's decision to enter an *Alford* plea.

The court then proceeded to sentencing, with a U.S. Probation Office presentence investigation report recommending a Guidelines range of 108 to 120 months'

7

imprisonment. That range did not incorporate an offense-level reduction for acceptance of responsibility; because Moore had refused an interview and failed to fill out probation forms related to his plea, the probation officer had no basis for evaluating acceptance of responsibility. The district court adopted the presentence report's recommendation. Moore's equivocation as to his guilt, the court explained, precluded a reduction for acceptance of responsibility. The *Alford* plea in this case, the court concluded, was not consistent with acceptance of responsibility, "because [Moore] doesn't, in his heart, believe he's guilty of the crime, even though he knows the evidence against him is overwhelming." J.A. 576. The district court ultimately sentenced Moore to imprisonment for 108 months, the bottom of the Guidelines range.

This timely appeal followed.

## II.

### A.

We may dispense briefly with two of Moore's challenges to his conviction. First, Moore claims that he was denied the effective assistance of counsel when he was represented by attorney Bell in connection with his original guilty plea. Moore relies in part on the same allegation raised in support of his motion to withdraw his guilty plea: that Bell pressured him to plead guilty, motivated by financial concerns. Moore also identifies additional purported errors, such as Bell's failure to move for suppression of Moore's confession, and alleges a general lack of zeal on Bell's part.

8

The district court, of course, made specific findings of fact regarding Bell's representation of Moore, concluding that Bell provided capable representation and credibly denied any financial influence on his advice. Regardless, we decline to reach Moore's ineffective assistance claim. Unless an attorney's ineffectiveness conclusively appears on the face of the record – a standard not met here – such claims are not addressed on direct appeal. *See United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008). Moore's ineffective assistance claim should be raised, if at all, in a 28 U.S.C. § 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).

Moore also argues that the district court erred in denying his motion to withdraw his guilty plea. We disagree. The district court held four hearings on Moore's motion, ordered a mental health evaluation to ensure that Moore was able to understand the proceedings, and heard extensive testimony regarding Moore's allegations against his attorney. In a lengthy explanation of its decision, the district court expressly applied each of the six factors we have deemed relevant to the analysis:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248; *see* J.A. 472 (summarizing application of each factor). Most important, the district court carefully analyzed the original Rule 11 colloquy, reviewing in detail the "full answers" given by Moore, and found it "extremely compelling" evidence that Moore entered his plea knowingly and voluntarily. J.A. 470; *see United*

9

*States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012) ("most important consideration" on motion to withdraw guilty plea is "an evaluation of the Rule 11 colloquy at which the guilty plea was accepted"). Combined with Bell's credible testimony that he had not pressured Moore to plead guilty, the court concluded, Moore could not assert credibly that his plea was not knowing or otherwise involuntary. The court also emphasized that in light of the "overwhelming evidence" against him, Moore could not credibly assert his innocence, J.A. 470–71, and that Moore had received the close assistance of able and experienced counsel.

The district court's determination that Moore failed to show a "fair and just reason" for withdrawal of his plea was well within the court's discretion. J.A. 473; *see Nicholson*, 676 F.3d at 383 (reviewing denial of motion to withdraw plea for abuse of discretion). We have no ground to disturb the court's judgment on this score.

**B.**

We turn now to the claim at the heart of this appeal: that the district court improperly participated in Moore's plea negotiation by encouraging Moore to enter an *Alford* plea.[1] Federal Rule of Criminal Procedure 11, which governs guilty pleas, clearly

---

[1] Moore appears also to argue that the magistrate judge who conducted his original plea colloquy improperly participated in plea negotiations, by virtue of that judge's failure to perceive that Moore's plea was not voluntary. But this is no more than a repackaging of Moore's underlying disagreement with the denial of his motion to withdraw his guilty plea as involuntary. Moore identifies no statement or action by the magistrate judge in support of a distinct claim of improper interference.

prohibits judicial participation in plea negotiations. While government and defense attorneys may "discuss and reach a plea agreement," "[t]he court *must not participate* in these discussions." Fed. R. Crim. P. 11(c)(1) (emphasis added). As we have explained, that prohibition serves "three principal interests: it diminishes the possibility of judicial coercion of a guilty plea; it protects against unfairness and partiality in the judicial process; and it eliminates the misleading impression that the judge is an advocate for the agreement rather than a neutral arbiter." *United States v. Sanya*, 774 F.3d 812, 815 (4th Cir. 2014) (internal quotation marks and citation omitted); *see also United States v. Braxton*, 784 F.3d 240, 242–43 (4th Cir. 2015).

Moore contends that the district court violated this dictate of Rule 11 at the sentencing hearing, when it raised the possibility of an *Alford* plea and then negotiated that plea directly with Moore. Because neither Moore nor his counsel objected before the district court – even after the government objected and the court expressly solicited the views of defense counsel – we review this claim for plain error only. *Sanya*, 774 F.3d at 815. To prevail under that "rigorous" standard, *id.*, Moore must demonstrate not only that the district court erred, and erred plainly, but also that the court's error affected Moore's substantial rights, which in this context means that there is a "reasonable probability that, but for the error, [Moore] would not have pleaded guilty." *See id.* at 816 (internal quotation marks and citation omitted). We conclude that Moore cannot establish the necessary effect on substantial rights, and therefore find no reversible error.

We do recognize that the proceedings in question were at least somewhat unorthodox. As noted above, there are questions as to exactly what transpired with

respect to Moore's various guilty pleas – whether his original plea was construed as an *Alford* plea, or converted to an *Alford* plea, or perhaps withdrawn and then replaced with an *Alford* plea – and precisely what authority the district court invoked in effectuating this outcome. But however the proceedings are characterized, it must be conceded that the district court took an active role in discussion of the *Alford* plea ultimately entered by Moore. It was the district court that first introduced the idea of an *Alford* plea; the district court that explained to Moore why, in the court's view, Moore's position was consistent with an *Alford* plea; and the district court that suggested that as a matter of conscience, Moore might want to forgo credit for acceptance of responsibility by entering an *Alford* plea.[2] And these were not "a single or even a few brief remarks" about an *Alford* plea, but rather the kind of "extensive and persistent" comments that may cross the line into forbidden judicial participation in plea negotiations, *Braxton*, 784 F.3d at 243–44, and in this case may have led Moore to believe that he was "cooperat[ing] with the [c]ourt" by entering his *Alford* plea, J.A. 559.

To be clear, we are confident that the district court, having expressed justifiable confusion regarding Moore's position on acceptance of responsibility, acted with the best

---

[2] When defense counsel wondered why Moore would enter an *Alford* plea if he fully understood that he would be giving up the benefit of an offense-level reduction for acceptance of responsibility, the following exchange ensued:

> The Court: Because his conscience is more important than some extra time in jail.
> The Defendant: Exactly.
> The Court: And I totally understand that.
> The Defendant: I agree. I agree.
> The Court: So that's exactly why he's doing that.

J.A. 564.

of intentions to ascertain Moore's state of mind and to ensure that Moore's plea reflected Moore's wishes. *See* J.A. 514–15 ("And I've been trying . . . [to] find out from you [] how you consider yourself guilty."); *id.* at 551–52 ("I'm trying to help – allow you to enter a plea that seems to comport with your personal conscience."). But the district court's active role in discussion of Moore's *Alford* plea does raise questions about whether the court inadvertently overstepped the boundaries of Rule 11.

We need not resolve that issue here, however, because Moore cannot establish the effect on substantial rights that would be necessary to prevail on plain error review. As a general rule, a violation of Rule 11(c)(1) affects substantial rights if there is a reasonable probability that but for the error, the defendant would not have pleaded guilty. *Braxton*, 784 F.3d at 244 & n.4. But what is unusual about this case, of course, is that Moore *already* had pleaded guilty well before the district court ever mentioned *Alford*. And the court, having denied Moore's motion to withdraw his guilty plea at a prior proceeding, made perfectly clear that it was prepared to hold Moore to his original plea. *See* J.A. 542 ("[Y]ou don't have to enter this *Alford* plea, but you still have the prior plea [] out there because I wouldn't let you withdraw it[.]"). So whether or not the district court influenced Moore with respect to the *nature* of his guilty plea, the *fact* of a guilty plea was a foregone conclusion. This is not a case, in other words, in which we need worry that a Rule 11(c)(1) error has affected a defendant's substantial right to proceed to trial, persuading him to forfeit that right by following a court's suggestion to enter a guilty plea. *See Braxton*, 784 F.3d at 244 (explaining that judicial intervention on behalf of plea

13

agreement and forfeiture of right to trial is inconsistent with court's role as neutral arbiter).

Nor did the precise nature of Moore's plea have any tangible effect on the proceedings at issue here. We recognize that under other circumstances, a court's improper suggestion that a defendant enter an *Alford* plea rather than a traditional guilty plea might well affect the defendant's sentence, because – as the district court explained to Moore – a defendant who pleads guilty under *Alford* generally will not receive a reduction for acceptance of responsibility. In this case, however, Moore was ineligible for acceptance of responsibility credit long before the district court raised the possibility of an *Alford* plea. Because Moore refused to participate in a presentence interview or fill out presentence forms, his presentence report advised that the reduction for acceptance of responsibility was inapplicable. And in adopting that recommendation, the district court relied as well on Moore's equivocation regarding his guilt during the hearings devoted to Moore's motion to withdraw his original guilty plea. Indeed, even at the sentencing hearing itself, it was Moore who opened by insisting that "I still want to maintain my innocence," J.A. 494, before the district court even mentioned an *Alford* plea. A defendant is entitled to an offense-level reduction for acceptance of responsibility only if he "clearly demonstrates acceptance of responsibility for his offense," U.S.S.G. § 3E1.1(a), and on the facts of this case, there is no reasonable probability that Moore could have met that standard, with or without the *Alford* plea.

14

In sum, Moore cannot show that any error the district court may have committed through discussion of his *Alford* plea affected his substantial rights. For that reason alone, Moore cannot prevail on plain error review.[3]

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[3] Even if Moore could show an effect on substantial rights, and assuming the existence of a plain error, we still could not grant relief unless the error in question "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Sanya*, 774 F.3d at 816 (internal quotation marks and citation omitted). Because any error in this case did not affect Moore's substantial rights, we have no occasion to consider that final hurdle.